IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

UNITED STATES BANKRUPTCY COURT
WESTERN DIVISION
RECEIVED

MAR 0 5 2026

TRAVIS D. GREEN
CLERK OF COURT
WESTERN DISTRICT OF TENN

| | |
|---|---|
| IN RE: | ) |
| APPERSON CRUMP, PLC, | ) |
|   Debtor. | ) |
| | ) |
| RANDEL EDWARD PAGE, JR., | ) |
|   Appellant, | ) Case No. 1:26-cv-01037-JAY |
| | ) |
| v. | ) Bankruptcy Case No. 25-11660 |
| | ) |
| APPERSON CRUMP, PLC, | ) |
| PAUL A. RANDOLPH, | ) |
| Acting U.S. Trustee Region 8, | ) |
|   Appellees. | ) |

**APPELLANT'S MOTION FOR MANDATORY WITHDRAWAL OF REFERENCE PURSUANT TO 28 U.S.C. § 157(d) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 5011(a)**

## I. INTRODUCTION AND RELIEF SOUGHT

Appellant Randel Edward Page, Jr., proceeding pro se, respectfully moves this Court pursuant to 28 U.S.C. § 157(d) and Federal Rule of Bankruptcy Procedure 5011(a) for mandatory withdrawal of the reference of this proceeding from the bankruptcy court to this Article III district court.

28 U.S.C. § 157(d) provides in mandatory terms: 'The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.' (Emphasis added.) The word 'shall' is not discretionary. Where mandatory withdrawal grounds are established, this Court is required to withdraw the reference.

This motion is filed as a timely motion. The bankruptcy case was dismissed February 17, 2026. This appeal was docketed March 4, 2026. This motion is filed within days of docketing, before any substantive proceedings have occurred before the bankruptcy court or the magistrate judge to whom this appeal was referred. No delay has occurred. No prejudice can result from withdrawal.

Mandatory withdrawal is required here on two independent grounds. First, resolution of this appeal requires substantial consideration of both Title 11 and multiple other federal laws regulating organizations and activities affecting interstate commerce, including RICO (18 U.S.C. §§ 1961-1964), the False Claims Act (31 U.S.C. § 3729 et seq.), the Medicare fraud statute (18 U.S.C. § 1347), and 42 U.S.C. § 1983. Second, under Stern v. Marshall, 564 U.S. 462 (2011), the claims at the heart of this appeal are private rights claims that constitutionally require Article III adjudication — and this Court is the first and only Article III tribunal with jurisdiction over them.

In addition to mandatory withdrawal, Appellant alternatively moves for permissive withdrawal under 28 U.S.C. § 157(d) for cause shown. The cause shown includes the documented pattern of improper magistrate referral without consent, the simultaneous presentation of a pre-signed magistrate order by the U.S. Trustee's Trial Attorney, the debtor's election not to participate in its own appeal, and the layered constitutional deficiency documented in Appellant's separately filed Objection to Order of Reference.

Under Federal Rule of Bankruptcy Procedure 5011(a), this motion must be heard by a district judge. It cannot be referred to or decided by a magistrate judge.

## II. JURISDICTION, VENUE, AND PROCEDURAL REQUIREMENTS

This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 1334 and 158(a). Under 28 U.S.C. § 158(a), district courts have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges. The dismissal order entered February 17, 2026 in Case No. 25-11660 is a final order.

Venue is proper in this district pursuant to 28 U.S.C. § 1409, as this is the district in which the underlying bankruptcy case was pending.

Under Federal Rule of Bankruptcy Procedure 5011(a), a motion to withdraw a case or proceeding under 28 U.S.C. § 157(d) must be heard by a district judge. The bankruptcy judge cannot conduct hearings on a withdrawal motion. The withdrawal decision is committed exclusively to the district court. Accordingly, this motion is properly before this Court and is not subject to referral to a magistrate judge under any circumstances.

This motion is timely. Timeliness is assessed from the point at which the moving party knew or should have known that the grounds for withdrawal existed. Appellant's grounds for mandatory withdrawal arise from the nature of the claims themselves — grounds that existed from the moment this appeal was docketed. This motion is filed within days of docketing, before any substantive ruling has been made by the bankruptcy court or the magistrate judge.

## III. THE NATURE OF APPELLANT'S CLAIMS — A $900 MILLION PRIVATE RIGHTS MATTER SPANNING MULTIPLE FEDERAL REGULATORY SCHEMES

Appellant holds Proof of Claim No. 4-2 in the amount of $900,000,000, deemed allowed February 7, 2026 after no objection was filed within the thirty-day period prescribed by Federal Rule of Bankruptcy Procedure 3001(f). The claim arises from the following bases, each of which is a private rights claim independent of the Bankruptcy Code:

- Fraud and false pretenses — Apperson Crump PLC submitted a fraudulent billing statement dated June 7, 2021, for legal services either not performed, performed in

furtherance of a criminal conspiracy, or manufactured to create false debt against Appellant;

- Civil rights violations under 42 U.S.C. § 1983 — deprivation of Appellant's constitutional rights through coordinated action by state-licensed attorneys operating under the authority of Tennessee judicial institutions;
- Conspiracy — coordinated conduct among Apperson Crump PLC, Evans Petree PC, and Butler Snow LLP constituting a RICO enterprise under 18 U.S.C. §§ 1961-1964 to steal Appellant's $900,000,000 in intellectual property (Monorail healthcare analytics technology);
- Medicare fraud — use of Appellant's stolen intellectual property to generate fraudulent claims against federal MIPS (Merit-based Incentive Payment System) and BPCI Advanced (Bundled Payments for Care Improvement) Medicare programs, constituting violations of 18 U.S.C. § 1347 and the False Claims Act, 31 U.S.C. § 3729 et seq.;
- Theft of intellectual property — the $900,000,000 Monorail healthcare analytics technology;
- Willful and malicious injury — conduct specifically intended to harm Appellant within the meaning of 11 U.S.C. § 523(a)(6).

None of these claims arises under the Bankruptcy Code. Every one of them implicates federal law outside Title 11. The resolution of this appeal — whether the bankruptcy court should have converted rather than dismissed — requires the Court to assess the value and viability of these claims as estate causes of action. That assessment necessarily requires substantial consideration of RICO, the False Claims Act, Medicare fraud statutes, and federal civil rights law. This is precisely the situation Congress identified in the mandatory withdrawal clause of § 157(d).

## IV. MANDATORY WITHDRAWAL IS REQUIRED UNDER 28 U.S.C. § 157(d)

### A. The Statutory Standard

The mandatory withdrawal clause of 28 U.S.C. § 157(d) provides that the district court 'shall' withdraw a proceeding on timely motion 'if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.'

Courts have interpreted the mandatory withdrawal standard to require withdrawal where the proceeding requires 'substantial and material consideration' of non-bankruptcy federal law — not merely incidental reference to it. The distinction is between proceedings that require the court to interpret and apply non-bankruptcy federal statutes as a substantial part of the resolution, versus proceedings where non-bankruptcy law appears only peripherally.

This proceeding requires substantial and material consideration of multiple non-bankruptcy federal statutes, each of which independently regulates organizations or activities affecting interstate commerce.

### B. RICO — 18 U.S.C. §§ 1961-1964

The core of Appellant's $900 million claim is a RICO enterprise involving three law firms — Apperson Crump PLC, Evans Petree PC, and Butler Snow LLP — conspiring to steal Appellant's intellectual property and defraud federal Medicare programs. RICO is a federal statute regulating criminal enterprises engaged in interstate commerce. 18 U.S.C. § 1961(4) defines an enterprise as 'any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact.' The predicate acts alleged — wire fraud, mail fraud, obstruction of justice, theft of intellectual property, and Medicare fraud — all involve interstate activities.

Resolution of whether the estate has viable causes of action against Evans Petree PC and Butler Snow LLP — the central question bearing on whether conversion was required rather than dismissal — necessarily requires substantial interpretation and application of 18 U.S.C. §§ 1961-1964. A bankruptcy court adjudicating a RICO enterprise claim is not applying bankruptcy law. It is applying a complex federal statute that regulates organized criminal activity affecting interstate commerce. This is mandatory withdrawal territory.

### C. The False Claims Act — 31 U.S.C. § 3729 et seq.

Appellant has documented that Apperson Crump PLC and its co-conspirators used stolen intellectual property — the Monorail healthcare analytics technology — to generate fraudulent claims against federal MIPS and BPCI Advanced Medicare programs. These are violations of the False Claims Act, 31 U.S.C. § 3729 et seq. The FCA imposes civil liability on any person who knowingly presents a false or fraudulent claim for payment to the United States government.

The bankruptcy estate has potential FCA qui tam claims against the conspirators — claims that could generate recoveries of treble damages plus civil penalties. The U.S. government is both a victim and a potential plaintiff. Resolution of whether dismissal rather than conversion served the best interests of creditors under 11 U.S.C. § 1112(b) requires assessment of these FCA claims and their value. That assessment requires substantial interpretation of the FCA — a complex federal statute with its own jurisdictional, pleading, and procedural requirements that are entirely outside the Bankruptcy Code.

### D. Medicare Fraud — 18 U.S.C. § 1347

18 U.S.C. § 1347 prohibits schemes to defraud any health care benefit program. The MIPS and BPCI Advanced programs are federal Medicare programs administered by the Centers for Medicare and Medicaid Services. Fraudulent claims against these programs implicate federal health care regulatory schemes governing organizations — specifically health care providers — whose activities substantially affect interstate commerce.

The bankruptcy estate's connection to this Medicare fraud scheme is direct: Apperson Crump PLC participated in the conspiracy to steal the intellectual property used to generate the fraudulent Medicare claims, and the fraudulent billing statement Apperson Crump sent Appellant was manufactured as part of that conspiracy. Resolution of these issues requires substantial interpretation of federal health care fraud statutes, federal Medicare program regulations, and the relationship between those regulatory schemes and the estate's potential causes of action.

### E. Civil Rights — 42 U.S.C. § 1983 and the FTCA

Appellant's claim includes civil rights violations under 42 U.S.C. § 1983 arising from the deprivation of his constitutional rights through coordinated action by state-licensed attorneys

operating under the authority of Tennessee judicial institutions. Section 1983 is a federal statute regulating the conduct of persons acting under color of state law — including state-licensed attorneys whose regulatory body, the Tennessee Board of Professional Responsibility, is a wholly controlled agency of the Tennessee Supreme Court.

Appellant has also filed a Federal Tort Claims Act claim against the United States government under 28 U.S.C. § 2674 for the participation of federal officials — including then-U.S. Attorney Kevin Ritz, now a Sixth Circuit judge — in the cover-up of the crimes documented in Appellant's evidence submissions. The FTCA is a federal statute governing the liability of the United States government. Its application requires substantial interpretation of federal law entirely outside the Bankruptcy Code.

Both § 1983 and the FTCA are statutes regulating activities affecting interstate commerce within the meaning of § 157(d)'s mandatory withdrawal clause. Their substantial presence in this proceeding independently requires mandatory withdrawal.

## V. MANDATORY WITHDRAWAL IS INDEPENDENTLY REQUIRED UNDER STERN v. MARSHALL

Independent of the § 157(d) statutory analysis, mandatory withdrawal of this proceeding is required by the constitutional holding of Stern v. Marshall, 564 U.S. 462 (2011). In Stern, the Supreme Court held that a non-Article III bankruptcy court lacked constitutional authority to enter final judgment on a state law counterclaim that was not resolved in the process of ruling on a creditor's proof of claim, even where Congress had granted statutory authority to do so. Id. at 503.

Every one of the claims underlying Appellant's $900 million Proof of Claim No. 4-2 is a Stern claim. They are private rights claims grounded in common law fraud, federal civil rights statutes, RICO, and intellectual property theft. They do not arise under the Bankruptcy Code. They are not resolved in the process of allowing or disallowing a proof of claim. They would exist entirely independently of the bankruptcy proceeding.

Under Stern, a non-Article III bankruptcy court cannot constitutionally enter final judgment on these claims without Appellant's consent. Appellant has not consented. The dismissal order entered by Bankruptcy Judge Croom — an Article I judge serving a 14-year renewable term without life tenure or the salary protections of Article III — effectively disposed of Appellant's $900 million Stern claims without Article III adjudication.

This Court — an Article III district court — is the first and only tribunal with constitutional authority to adjudicate these claims. Withdrawal of the reference to this Court is not merely authorized under § 157(d); it is constitutionally required under Stern and Wellness International Network, Ltd. v. Sharif, 575 U.S. 665 (2015). The district court may not route the adjudication of Stern claims back to a non-Article III bankruptcy court, nor may it refer the appeal of a bankruptcy court order disposing of Stern claims to a non-Article III magistrate judge — which is the precise procedural posture of this case as of the filing of this motion.

## VI. IN THE ALTERNATIVE: PERMISSIVE WITHDRAWAL FOR CAUSE SHOWN

Even if this Court were to conclude that mandatory withdrawal is not required — which Appellant respectfully submits would be error — permissive withdrawal for cause shown is clearly warranted under the first sentence of 28 U.S.C. § 157(d).

Courts consider the following factors in evaluating permissive withdrawal: (1) whether the proceeding is core or non-core; (2) judicial efficiency; (3) uniformity in bankruptcy administration; (4) reduction of forum shopping; (5) conservation of debtor and creditor resources; and (6) the presence of a jury trial right.

Every factor favors withdrawal here. First, Appellant's $900 million claim is non-core under Stern — it does not arise under the Bankruptcy Code and cannot be finally adjudicated by the bankruptcy court. Second, judicial efficiency strongly favors withdrawal because this Court will be required to review the bankruptcy court's rulings de novo under § 157(c)(1) in any event — withdrawal eliminates a redundant layer of non-Article III proceedings. Third, uniformity in bankruptcy administration is served by having an Article III court establish the applicable standard for § 1112(b) conversion analysis when a creditor has documented a $900 million RICO enterprise and mandatory investigation duties were not performed before dismissal was sought. Fourth, forum shopping concerns do not apply — Appellant is not choosing a forum; Appellant is invoking the constitutional requirement of Article III adjudication. Fifth, conservation of resources favors withdrawal because proceeding through magistrate report-and-recommendation followed by de novo district court review is more costly and time-consuming than direct Article III adjudication. Sixth, Appellant has a Seventh Amendment jury trial right on the fraud and RICO components of the underlying claims — and bankruptcy courts cannot conduct jury trials without express consent under 28 U.S.C. § 157(e).

## VII. THIS MOTION MUST BE DECIDED BY AN ARTICLE III DISTRICT JUDGE

Federal Rule of Bankruptcy Procedure 5011(a) provides without qualification: 'A motion to withdraw a case or proceeding under 28 U.S.C. § 157(d) must be heard by a district judge.' The advisory committee notes confirm that 'the withdrawal decision is committed exclusively to the district court.'

Accordingly, this motion cannot be referred to Magistrate Judge York or any other magistrate judge for report and recommendation or any other purpose. It must be decided by an Article III district judge. Appellant respectfully requests that this Court designate an Article III district judge to hear and decide this motion forthwith, consistent with FRBP 5011(a) and the constitutional requirements of Stern v. Marshall.

This requirement is self-reinforcing with Appellant's separately filed Objection to Order of Reference (ECF Doc. ___). Both filings demand Article III adjudication. Both are before this Court simultaneously. Both are supported by the same constitutional and statutory framework. The Court should address both together and clarify that an Article III district judge will preside over this appeal.

## VIII. THE EIGHT-DAY DISMISSAL MOTION — EVIDENCE OF THE NEED FOR ARTICLE III OVERSIGHT

On January 12, 2026, Appellant submitted a detailed letter to U.S. Trustee Trial Attorney Carrie Ann Rohrscheib identifying specific estate causes of action against Evans Petree PC and Butler Snow LLP — solvent entities against whom the estate had viable RICO, fraud, and

conspiracy claims worth potentially hundreds of millions of dollars. That letter requested that the U.S. Trustee investigate those causes of action before taking any action to dispose of the estate.

On January 20, 2026 — eight days later — the U.S. Trustee filed the Motion to Dismiss or Convert, which ultimately resulted in the February 17, 2026 dismissal order now on appeal.

11 U.S.C. § 1106(a)(3) imposes a mandatory, non-discretionary duty on a trustee to investigate the acts, conduct, assets, liabilities, and financial condition of the debtor and any cause of action available to the estate. The mandatory investigation that § 1106(a)(3) requires cannot meaningfully be conducted in eight days on a matter involving a $900 million claim and a documented RICO enterprise spanning multiple law firms and federal programs.

The dismissal order — entered without the mandatory § 1106(a)(3) investigation having been conducted — eliminated the only federal mechanism by which those estate causes of action would have been formally investigated and preserved. The question of whether that elimination was lawful under § 1112(b) is a question of federal bankruptcy law intertwined with RICO, the False Claims Act, and federal civil rights statutes. It is precisely the question that § 157(d) mandatory withdrawal was designed to place before an Article III court.

## IX. THE DEBTOR'S ELECTION NOT TO PARTICIPATE CONFIRMS THE MERITS OF WITHDRAWAL

Apperson Crump PLC — the debtor whose dismissal order is on appeal — has affirmatively elected not to participate in this appeal. Its counsel, C. Jerome Teel, has confirmed that the debtor does not intend to defend the dismissal.

A debtor with a legitimate defense of its dismissal would participate in the appeal. A debtor that chose dismissal over conversion because dismissal best served the interests of creditors would say so. Apperson Crump's silence is consistent with a recognition that the constitutional and statutory dimensions of this appeal — the Stern problem, the § 157(d) mandatory withdrawal grounds, the § 1106(a)(3) investigation failure — do not favor the debtor's position, and that vigorous participation in this appeal would require placing on the record evidence more damaging to the debtor and its co-conspirators than any appellate outcome.

With the debtor not participating, the sole appellee defending the dismissal is the U.S. Trustee. As Appellant has documented in separate correspondence to the U.S. Trustee's office, the eight-day timeline between Appellant's evidence submission and the dismissal motion raises serious questions about whether the § 1106(a)(3) investigation duty was performed before dismissal was sought. An Article III district judge — not a magistrate judge operating on report-and-recommendation — is the constitutionally appropriate officer to evaluate those questions.

## X. RELIEF REQUESTED

WHEREFORE, Appellant Randel Edward Page, Jr. respectfully requests that this Court:

1. GRANT mandatory withdrawal of the reference of Case No. 1:26-cv-01037 from any bankruptcy court or magistrate judge reference pursuant to 28 U.S.C. § 157(d), on the ground that resolution of this proceeding requires substantial consideration of both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce, including 18 U.S.C. §§ 1961-1964 (RICO), 31 U.S.C. § 3729 et seq.

(False Claims Act), 18 U.S.C. § 1347 (Medicare fraud), 42 U.S.C. § 1983 (civil rights), and 28 U.S.C. § 2674 (Federal Tort Claims Act);

2. ALTERNATIVELY, GRANT permissive withdrawal for cause shown under 28 U.S.C. § 157(d), based on the non-core nature of Appellant's claims, the Stern v. Marshall constitutional requirements, the § 1106(a)(3) investigation failure documented herein, and all other factors bearing on the interests of justice;

3. DESIGNATE an Article III district judge to hear and decide this motion and to preside over this appeal on the merits, consistent with Federal Rule of Bankruptcy Procedure 5011(a) and the constitutional requirements of Stern v. Marshall, 564 U.S. 462 (2011);

4. CONSOLIDATE this motion with Appellant's separately filed Objection to Order of Reference (ECF Doc.73A) and address both in a single ruling establishing the Article III judicial officer who will preside over this appeal;

5. DIRECT that all further proceedings in this appeal — including briefing, oral argument, and final judgment — occur before an Article III district judge;

6. GRANT such other and further relief as the Court deems just and proper.

## XI. CONCLUSION

This is not a routine bankruptcy appeal. It is a $900 million private rights matter spanning RICO, Medicare fraud, civil rights violations, and intellectual property theft — matters that constitutionally require Article III adjudication and that statutorily require mandatory withdrawal of the reference under 28 U.S.C. § 157(d). The mandatory withdrawal clause uses the word 'shall.' This Court shall withdraw this proceeding on timely motion. That motion is before the Court now.

Appellant respectfully requests that this Court grant the motion, designate an Article III district judge to preside, and consolidate this motion with the separately filed Objection to Order of Reference so that the Article III adjudication to which Appellant is constitutionally entitled can proceed without further delay.

/s/ Randel E. Page

Randel Edward Page, Jr., Pro Se Appellant
3504 Milford Cove
Collierville, Tennessee 38017
Telephone: (901) 351-6060
Email: randelpage@gmail.com

Dated: March 5, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2026, a true and correct copy of the foregoing Motion was served via first class mail and/or electronic mail upon:

United States Trustee, Region 8
Attn: Carrie Ann Rohrscheib, Trial Attorney
200 Jefferson Avenue, Suite 400
Memphis, Tennessee 38103
carrie.a.rohrscheib@usdoj.gov

C. Jerome Teel, Esq.
Counsel for Debtor/Appellee Apperson Crump PLC

_____
Randel Edward Page, Jr.