**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE** UNITED STATES BANKRUPTCY COURT
WESTERN DIVISION
**EASTERN DIVISION** RECEIVED

APR 2 9 2026

TRAVIS D. GREEN
CLERK OF COURT
WESTERN DISTRICT OF TENN.

**RANDEL EDWARD PAGE, JR.,**

Appellant,

v.

**APPERSON CRUMP, PLC, and,**
**UNITED STATES TRUSTEE, REGION 8,**

Appellees.

**No. 1:26-cv-01037-JDB-jay**

CASE NO 25-11660

---

**APPELLANT RANDEL EDWARD PAGE, JR.'S RESPONSE TO ORDER TO SHOW**
**CAUSE AND MOTION FOR SUMMARY DISPOSITION WITH REMAND AND**
**INSTRUCTIONS TO CONVERT TO CHAPTER 7 AND APPOINT A NON-ATTORNEY**
**SUBJECT MATTER EXPERT TRUSTEE FROM OUTSIDE THIS DISTRICT: THE**
**RECORD IS COMPLETE AND THE REMEDY IS CLEAR**

**I. INTRODUCTION: THE RECORD IS COMPLETE. THE REMEDY IS CLEAR.**

Appellant Randel Edward Page, Jr., proceeding pro se, respectfully submits this Response to the Court's Order to Show Cause (D.E. 28) and simultaneously moves this Court for summary disposition of this appeal — reversal of the Bankruptcy Court's February 17, 2026 dismissal order and remand with instructions to convert Case No. 25-11660 to Chapter 7 and appoint a non-attorney subject matter expert trustee from outside this district to conduct the investigation.

The primary issue is this: the Bankruptcy Court of the Western District of Tennessee dismissed a case in which a $900,000,000 Proof of Claim had just been deemed allowed by operation of federal law — over the recommendation of the United States Trustee, without an evidentiary hearing, and without the written findings required by 11 U.S.C. Section 1112(b)(1) — while a named co-conspirator in a documented RICO enterprise monitored every filing through the federal court's own CM/ECF system and said nothing. The fraud at the center of this case is not general commercial misconduct. It is the theft of healthcare analytics intellectual property — Monorail technology — and its use to generate fraudulent claims against federal MIPS and BPCI Advanced Medicare programs. Investigating that fraud requires a trustee who understands how those federal programs work, how they are manipulated, and what evidence to pursue. It does not require a Tennessee attorney.

That dismissal did not happen in a vacuum. It happened in a state — both state and federal court system — where Appellant has documented, with evidence submitted to the FBI and DOJ, a pattern of results that uniformly protect the enterprise and foreclose investigation. Every tribunal

Page 1 of 15

in this state that has touched this matter has reached the result most favorable to the enterprise and least favorable to a federal investigation of Medicare fraud against programs the United States government administers and funds.

> **This Court is now the record. Every order it enters is visible in real time to Evans Petree PC — a named RICO co-conspirator — through CM/ECF. Appellant respectfully submits that this Court has an opportunity to break the documented pattern of Tennessee institutional protection of this enterprise by ordering what the United States Trustee recommended: conversion to Chapter 7, with a non-attorney subject matter expert appointed from outside this district to conduct the investigation that Tennessee's captured institutional structure has systematically prevented.**

A full appellate brief is not necessary. The record is complete. The remedy is legally compelled. This Court should act now.

## II. THE COMPLETE RECORD ALREADY BEFORE THIS COURT REQUIRES NO FURTHER BRIEFING

Federal Rule of Bankruptcy Procedure permits this Court to dispose of an appeal without full briefing. Every document needed to reverse the Bankruptcy Court's dismissal and order conversion to Chapter 7 is already docketed:

> **Proof of Claim No. 4-2 (January 8, 2026):** $900,000,000 claim based on fraud, civil rights violations, conspiracy, theft of healthcare analytics intellectual property (Monorail technology), and willful and malicious injury — deemed allowed February 7, 2026 after no party filed any objection under FRBP 3001(f). Prima facie evidence of validity and amount by operation of law.

> **The Fraudulent Billing Statement — Exhibit A:** The June 7, 2021 billing statement from Apperson Crump PLC — the Smoking Gun — filed as a docketed court exhibit, deemed admitted, and never examined by any court-appointed fiduciary because the Bankruptcy Court dismissed before a Chapter 7 trustee could be appointed.

> **Affidavit in Support of Proof of Claim (ECF No. 62, January 22, 2026):** 74-paragraph sworn affidavit with 17 evidentiary sections documenting the RICO enterprise, Medicare fraud against federal MIPS and BPCI Advanced programs, public corruption by Tennessee Attorney General Jonathan Skrmetti while a partner at Butler Snow LLP, and obstruction by former U.S. Attorney Kevin Ritz — now a sitting Sixth Circuit judge.

> **U.S. Trustee Motion to Dismiss or Convert (ECF No. 53, January 20, 2026):** Filed eight days after receiving Appellant's evidence. Four independent grounds for cause including Debtor's inability to obtain malpractice insurance. Recommended remedy: conversion to Chapter 7 so a trustee with investigative authority could examine the estate. No party recommended dismissal.

> **Advocate Capital Abandonment Order (Doc. 65, February 10, 2026):** All collateral abandoned under 11 U.S.C. Section 554 — the entire value of Debtor's law practice returned to the estate as unencumbered assets — with no trustee to administer them because the Bankruptcy Court dismissed one week later.

**CNA Continental Casualty Post-Dismissal Proof of Claim (Doc. 137, March 17, 2026):** $185,000 in malpractice payments on two separate Apperson Crump matters confirmed by an independent institutional insurer after dismissal — independent corroboration of fraud on the federal court record from a sophisticated commercial carrier with no stake in Appellant's personal claims.

**Evans Petree PC CM/ECF Monitoring:** A named RICO enterprise co-conspirator received electronic notice of every filing through attorney Bertis Echols. Evans Petree never appeared, never objected, and never denied the fraud allegations against it. Silence in the face of specific docketed allegations constitutes adoptive admission under Fed. R. Evid. 801(d)(2)(B).

**FBI Criminal Referrals (February 20, 2026):** Comprehensive referrals to FBI — all incorporated by reference in filings before this Court.

**Tyler Sory Federal Indictment and FBI Evidence Coordination (Case 2:25-cr-20185-TLP):** Tyler Sory, identified by Appellant as a co-conspirator in the enterprise that stole Appellant's intellectual property, has been federally indicted in this district. Appellant submitted evidence to the FBI agent investigating Sory and communicated directly with Assistant United States Attorney Lauren Delery, who is prosecuting Case 2:25-cr-20185-TLP. Appellant's evidence was submitted to federal law enforcement before that indictment existed. The federal government's own active prosecution in this district of a named enterprise co-conspirator corroborates Appellant's account of the enterprise's existence and operation, and demonstrates that a Chapter 7 trustee investigation would have an active federal prosecution to coordinate with — not a cold evidentiary trail to reconstruct from scratch.

This record does not require supplementation. The question before this Court is not whether a brief might illuminate additional arguments. It is whether this Court will act on what the record already shows.

## III. THE SMOKING GUN IS ALREADY IN THE FEDERAL COURT RECORD, DEEMED ADMITTED, AND HAS NEVER BEEN EXAMINED BY A COURT-APPOINTED FIDUCIARY

The foundation of this entire case is a single document already docketed and deemed admitted by operation of law: the June 7, 2021 billing statement from Apperson Crump PLC to Appellant, attached as Exhibit A to Proof of Claim No. 4-2.

This billing statement was submitted to Appellant for legal services that were either: (a) never performed; (b) performed in furtherance of a criminal conspiracy to steal Appellant's $900,000,000 in healthcare analytics intellectual property; or (c) manufactured entirely to convert Appellant from a creditor into a debtor — enabling co-conspirators to make fraudulent claims against federal MIPS and BPCI Advanced Medicare programs using Appellant's stolen Monorail technology. That characterization was submitted under penalty of perjury in a 74-paragraph affidavit that no party rebutted, objected to, or contested within the period prescribed by federal law.

Understanding the full significance of this document requires subject matter expertise that a standard Tennessee attorney-trustee does not possess:

- **MIPS — Merit-based Incentive Payment System** — a federal Medicare payment program administered by CMS that adjusts physician payment rates based on quality metrics and performance data. Appellant's Monorail technology generated the analytics underlying those metrics. A trustee investigating how that technology was stolen and used to generate fraudulent MIPS claims must understand how MIPS payment adjustments are calculated, what data is submitted to CMS, and how fraudulent submissions are constructed.

- **BPCI Advanced — Bundled Payments for Care Improvement Advanced** — a CMS Innovation Center payment model that bundles Medicare payments across care episodes. Appellant's analytics technology was directly applicable to BPCI Advanced episode grouping and performance measurement. A trustee investigating BPCI Advanced fraud must understand episode attribution, target price calculation, and performance reconciliation — technical knowledge far outside standard legal training.

- **Healthcare Analytics IP Valuation** — the $900,000,000 valuation of Monorail technology is not a legal conclusion. It is a healthcare economics determination based on the revenue-generating capacity of analytics technology applied to federal Medicare payment programs. A trustee evaluating and pursuing the estate's $900 million claim must understand how to value healthcare analytics intellectual property against federal program benchmarks.

> **A Tennessee attorney-trustee drawn from the Western District panel cannot effectively investigate Medicare fraud against MIPS and BPCI Advanced programs. Subject matter expertise in federal healthcare payment systems is not a legal credential. It is a technical qualification that the enterprise specifically exploited — and that the trustee investigating it must specifically possess.**

The fraudulent billing statement has never been reviewed by any court-appointed fiduciary with either the investigative authority or the subject matter expertise to act on it. The Bankruptcy Court dismissed the case before that review could occur. This Court should restore the opportunity for that review — with a trustee who has the qualifications to conduct it.

## IV. AN INDEPENDENT INSURANCE CARRIER CONFIRMED THE FRAUD AFTER DISMISSAL — EVIDENCE THE BANKRUPTCY COURT NEVER SAW

On March 17, 2026 — one month after the Bankruptcy Court dismissed Case No. 25-11660 — Continental Casualty Company (CNA) filed a Proof of Claim (Doc. 137) documenting $185,000 in malpractice payments on two separate Apperson Crump PLC client matters. CNA is not Appellant. CNA has no personal stake in Appellant's $900 million claim. CNA investigated these malpractice matters thoroughly before paying them. CNA's decision to file in a dismissed case — after the automatic stay had lifted and any routine incentive to participate had evaporated — reflects an institutional judgment that the fraud in this record was real, documented, and significant enough to warrant a permanent federal court entry.

> **What CNA's filing proves:** Apperson Crump PLC committed malpractice on at least two separate client matters serious enough to trigger $185,000 in insurance payouts. Professional liability carriers investigate before they pay.

**What CNA's timing proves:** CNA filed after dismissal in a case with no active trustee and no automatic stay. A sophisticated insurer does not do that without reason. The fraud in this record warranted a permanent court entry regardless of case status.

**What a subject matter expert trustee would do with CNA's filing:** CNA possesses the claims files, client communications, attorney work product, and internal Apperson Crump records underlying the two malpractice matters it paid. A trustee with Rule 2004 examination authority and healthcare fraud investigation expertise could compel production of those records, analyze them against the MIPS and BPCI Advanced fraud documented in Appellant's Affidavit, and identify the estate causes of action they support. A standard attorney-trustee reviewing those records without healthcare analytics expertise would not know what to look for.

**What the Bankruptcy Court never saw:** CNA filed Doc. 137 one month after dismissal. The Bankruptcy Court that dismissed on February 17, 2026 never saw this institutional corroboration. This Court sees it. It is precisely the kind of post-dismissal evidence that constitutes cause for reopening under 11 U.S.C. Section 350(b) and grounds for reversal on appeal.

## V. EXPERIAN INFORMATION SOLUTIONS, INC. HAS INDEPENDENTLY CORROBORATED THE IDENTITY THEFT: APPELLANT'S FICO SCORE HAS BEEN DELETED FROM HIS STOLEN IDENTITY

Experian Information Solutions, Inc. — one of the three major United States credit reporting agencies — conducted a formal investigation into accounts associated with Appellant's identity and, as a result of that investigation, deleted Appellant's FICO score from his credit profile. A FICO score is not deleted upon routine dispute. It is deleted when the underlying identity data is determined to be compromised. Experian's deletion of Appellant's FICO score is an independent institutional determination by a federally regulated credit reporting agency that Appellant's identity has been stolen and remains stolen. Appellant's identity theft is not a historical event. It is an ongoing injury — Appellant has no FICO score, no restored financial identity, and no credit standing, and will not until this Court orders the relief that restores them. Full financial restoration requires the redress this appeal seeks. The theft of Appellant's identity, his intellectual property, and his financial standing are not separate injuries — they are one continuous injury inflicted by the same enterprise, confirmed by the same institutional record, and remediable only through the Chapter 7 trustee investigation that the Bankruptcy Court foreclosed. Experian's finding joins CNA's post-dismissal malpractice confirmation and Advocate Capital's collateral abandonment as the third independent institutional actor to document the ongoing harm. A non-attorney forensic trustee with subpoena authority over Experian's complete investigation file would connect the stolen identity directly to the intellectual property theft at the center of this estate. The Court further notes that the Monorail v. Baptist/Epic complaint — already referenced in Appellant's sworn Affidavit (ECF No. 62) and therefore already part of the docketed record — demonstrates that the stolen Monorail healthcare analytics intellectual property was deployed through institutional healthcare relationships extending far beyond Apperson Crump itself, and that a non-attorney subject matter expert trustee is uniquely positioned to trace those deployments through the federal Medicare billing record in ways that no attorney-trustee without healthcare analytics expertise could accomplish.

## VI. A NAMED RICO CO-CONSPIRATOR IS MONITORING THESE PROCEEDINGS THROUGH CM/ECF IN REAL TIME AND HAS NEVER DENIED A SINGLE ALLEGATION

This Court should be aware of a fact documented in the CM/ECF notification system: Evans Petree PC — identified in Appellant's Proof of Claim, Affidavit, and FBI criminal referrals as a member of the RICO enterprise that stole $900,000,000 in healthcare analytics intellectual property from Appellant — has been receiving electronic notification of every filing in Case No. 25-11660 and this appellate proceeding through its attorney of record, Bertis Echols.

Evans Petree has actual, documented, real-time notice of:

- Appellant's $900 million Proof of Claim naming Evans Petree as a RICO enterprise member (January 8, 2026);

- Appellant's 74-paragraph sworn Affidavit documenting Evans Petree attorneys Joel Sklar and Julie Wells producing a fraudulent NDA and conspiring with Butler Snow LLP to steal Appellant's identity and property (January 22, 2026);

- The U.S. Trustee's Motion identifying four grounds for cause and recommending conversion (January 20, 2026);

- CNA's post-dismissal Proof of Claim confirming malpractice (March 17, 2026);

- This Order to Show Cause (April 23, 2026);

- This Response and Motion for Summary Disposition (April 29, 2026).

Evans Petree's response across four months of federal court proceedings has been complete and total silence. Evans Petree has not appeared, not filed a motion, not submitted a declaration, and not denied a single allegation. A law firm with full legal capacity, CM/ECF access, and every incentive to defend itself against $900 million in documented fraud allegations has chosen to monitor and say nothing.

Under Federal Rule of Evidence 801(d)(2)(B), a party's silence in the face of allegations it has the opportunity and motivation to deny constitutes an adoptive admission. Evans Petree had the opportunity. Evans Petree had the motivation. Evans Petree said nothing. That silence is in the federal court record and is admissible as an admission of every allegation Appellant has made.

> **Evans Petree PC is reading this filing right now through CM/ECF. Every order this Court enters will be visible to a named RICO co-conspirator within minutes of docketing. A non-attorney subject matter expert trustee appointed from outside this district — without ties to the Tennessee legal community Evans Petree operates within — eliminates the institutional familiarity that a Tennessee attorney-trustee would inevitably share with the enterprise's law firm members.**

Evans Petree is not merely monitoring as a named co-conspirator. It is monitoring as the successor assumed-name entity to Bourland Heflin Alvarez Minor & Matthews, PLC — the law firm that represented Epic Systems Corporation in the Monorail v. Baptist/Epic litigation and whose attorney John J. Heflin III coordinated directly with Apperson Crump to pressure Appellant to destroy evidence. Through the April 4, 2022 assumed name registration "Evans Petree Bourland

Heflin PC" (Tennessee Secretary of State Tracking No. B1196-4512), Evans Petree absorbed Epic's defense counsel and with it full institutional knowledge of every argument Appellant made in the underlying Monorail litigation, every piece of evidence Appellant produced, and every legal strategy Appellant deployed. Evans Petree is therefore monitoring this appellate proceeding not merely as a named RICO co-conspirator but as the institutional repository of Epic Systems' complete litigation intelligence against Appellant. That intelligence was obtained through a law firm that first attempted to compel evidence destruction and then merged with the enterprise's primary IP theft firm. A non-attorney subject matter expert trustee from outside this district — with no connection to the Memphis legal community within which all of these firms operated — is the only mechanism capable of investigating that institutional consolidation without the conflicts that pervade every Tennessee attorney available to serve as trustee.

A Chapter 7 trustee appointed upon conversion would have standing under 18 U.S.C. Section 1964(c) to pursue civil RICO claims against Evans Petree PC directly, Rule 2004 authority to compel production of the conspiracy emails and fraudulent NDA, and — if the trustee possesses healthcare analytics expertise — the ability to trace how Evans Petree's participation in the IP theft translated into fraudulent Medicare program claims. The Bankruptcy Court's dismissal foreclosed that investigation entirely.

## VI. THE STATUTE DOES NOT REQUIRE AN ATTORNEY TRUSTEE — AND THE FACTS OF THIS CASE DEMAND A NON-ATTORNEY SUBJECT MATTER EXPERT FROM OUTSIDE THIS DISTRICT

### A. Statutory Authority: 11 U.S.C. Section 321 Does Not Require an Attorney

11 U.S.C. Section 321(a) provides that a person may serve as trustee in a case under the Bankruptcy Code only if the person is: (1) an individual that is competent to perform the duties of trustee; and (2) an individual that resides or has an office in the judicial district within which the case is pending, or in any judicial district adjacent to such district. The statute is explicit and complete. It does not require the trustee to be an attorney. It does not require bar admission. It does not require any legal credential. It requires competence to perform the duties — and residence or office in the district or an adjacent district.

Non-attorney trustees are recognized and utilized in bankruptcy practice, particularly in complex commercial cases where the subject matter of the estate's primary assets and causes of action requires specialized expertise that legal training does not provide. The decision to appoint a non-attorney trustee is within the U.S. Trustee's discretion under 28 U.S.C. Section 586 and this Court's authority to direct on remand.

### B. The Subject Matter of This Estate Demands Healthcare Analytics Expertise, Not Legal Credentials

The primary assets and causes of action of this bankruptcy estate are not legal in nature — they are healthcare analytics in nature. The estate's causes of action arise from:

- **Theft of Monorail healthcare analytics technology** — intellectual property whose value derives from its application to federal Medicare payment program optimization. Investigating, valuing, and pursuing claims for that theft requires understanding what the

technology does, how it generates value within MIPS and BPCI Advanced payment structures, and how its theft harmed those federal programs.

- **MIPS fraud** — fraudulent claims submitted against the Merit-based Incentive Payment System using stolen Monorail analytics. Identifying what was submitted, to whom, in what amounts, and through which billing entities requires CMS data analysis expertise and knowledge of MIPS performance reporting requirements.

- **BPCI Advanced fraud** — fraudulent claims submitted against the Bundled Payments for Care Improvement Advanced program using stolen analytics. Tracing BPCI Advanced fraud requires understanding episode grouping, target price manipulation, and performance reconciliation data that CMS maintains — technical knowledge entirely outside standard legal training.

- **Estate causes of action against solvent co-conspirators** — Evans Petree PC, Butler Snow LLP, Baptist Memorial Health Care Corporation, Methodist Health System, Epic Systems Corporation, Dr. Lee Schwartzberg (West Clinic), and Dr. Steve Gubin (Stern Cardiology) and others. Maximizing recovery against these parties requires a trustee who can connect the stolen analytics technology to specific Medicare billing fraud — a connection that requires healthcare payment expertise to trace and document.

A standard Tennessee attorney-trustee appointed from the Western District panel will arrive at this estate knowing bankruptcy law and Tennessee commercial practice. That trustee will not arrive knowing how MIPS payment adjustments are calculated, how BPCI Advanced episode attribution works, how healthcare analytics IP is valued against federal program benchmarks, or how to identify fraudulent CMS submissions in the claims data. The enterprise specifically exploited that gap in the Tennessee legal community's knowledge. The trustee investigating it must close that gap.

## C. The Structural Conflict: Every Available Tennessee Attorney-Trustee Is Licensed by a Documented Co-Conspirator

Beyond subject matter expertise, there is a structural legal reason why a Tennessee attorney-trustee cannot conduct an independent investigation of this estate: every attorney available from the Western District of Tennessee trustee panel is licensed by the Tennessee Board of Professional Responsibility (TBPR) — documented in the federal record before this Court as a co-conspirator in civil rights violations.

> **Private Attorney Capture — John B. Turner, Esq. (Chancery Court):** John B. Turner, Esq., Appellant's former private counsel in Chancery Court proceedings, possessed documented knowledge of the enterprise's fraudulent conduct and withdrew from representation rather than expose it — characterizing Appellant's insistence on exposing the fraud as "scorched earth litigation" in his withdrawal communications. Turner's withdrawal left Appellant without counsel in an active Chancery Court proceeding in which fraud on the court had been committed and left unaddressed. The enterprise's operational protection mechanism is precisely this: every Tennessee-licensed attorney who obtains sufficient proximity to the fraud calculates that exposure carries the cost of their TBPR license, and withdraws rather than fulfill their duty to the court and their client. Turner's withdrawal is the documented origin of Appellant's pro se status across all active proceedings — including this

appeal. The enterprise did not merely steal Appellant's intellectual property. It captured his legal representation and left him to prosecute a $900 million federal claim without counsel.

**Apperson Crump Withdrawal, Evidence Destruction Coordination, and Bourland Heflin Merger with Evans Petree (2021–2022):** The documents already in the federal court record establish the following documented sequence: (1) On June 7, 2021, Apperson Crump sent Appellant the fraudulent billing statement now deemed admitted as Exhibit A to Proof of Claim No. 4-2. (2) In June 2021, Apperson Crump — Monorail's own counsel — withdrew from representation of Monorail Healthcare Services, LLC in Circuit Court Case No. CT-002704-27 (Monorail v. Baptist Memorial Health Care Corporation; Epic Systems Corporation), with the withdrawal order signed by Apperson Crump and approved "with permission" by John J. Heflin III and Jack F. Heflin of Bourland Heflin Alvarez Minor & Matthews, PLC — Epic Systems Corporation's own defense attorneys. The withdrawal order was served on Joel B. Sklar at jsklar1@evanspetree.com. (3) On October 21, 2021, John J. Heflin III — Epic's attorney — emailed Apperson Crump attorneys Bruce Kramer, Jake Brown, and Timothy Ginski directly, demanding Appellant's phone number to pressure him to certify destruction of confidential documents under the Consent Protective Order, and threatening to haul Appellant before Judge Wagner if he refused. Apperson Crump — no longer Appellant's attorney — had already certified its own document destruction. (4) On November 1, 2021, Apperson Crump forwarded Heflin's threat to Appellant, stating: "Apperson Crump has complied with its obligations as to the confidential documents. However, you have a separate agreement to do so as well." (5) On April 4, 2022, Evans Petree PC — a named RICO enterprise member — filed an assumed name with the Tennessee Secretary of State registering the name "Evans Petree Bourland Heflin PC," merging with Epic Systems' own defense attorneys five months after the failed evidence destruction scheme. This sequence — withdrawal, evidence destruction coordination between plaintiff's and defendant's counsel, and merger of enterprise law firms — is documented in the Tennessee Secretary of State corporate record (Tracking No. B1196-4512, April 4, 2022) and in the Circuit Court withdrawal order and email correspondence already submitted as exhibits in this record. It constitutes a documented RICO predicate act sequence that a non-attorney subject matter expert trustee appointed upon conversion would have full Rule 2004 authority to investigate.

- The TBPR dismissed Appellant's complaints against multiple enterprise law firms with a single-sentence email: 'This case is closed.' That dismissal is documented with the letter to prove it and is part of the record submitted to the FBI and DOJ.

- The TBPR denied Appellant's appeal without allowing the Board to hear evidence — documented procedural suppression of the fraud record.

- Tennessee Attorney General Jonathan Skrmetti — who oversees the state judicial system within which the TBPR operates — is documented in Appellant's sworn Affidavit as a participant in federal crimes while a partner at Butler Snow LLP, a named enterprise member.

- RLI Insurance Company confirmed in writing on February 11, 2026 that it is 'not aware of any bonds responsive' to allegations involving Tennessee court officials — meaning

Tennessee court officials are operating without the legally required bonds under TN Code Section 4-4-108.

- Every Tennessee attorney who has been contacted in connection with this matter — including Appellant's former auto accident counsel Austin Alders of Alders and Lewellyn PLLC — has refused to answer basic conflict of interest questions under RPC 1.7, confirming the structural conflict that makes Tennessee-licensed attorney representation impossible in this matter.

> **A Tennessee attorney-trustee appointed to investigate this estate would be: licensed by an agency documented as a co-conspirator; regulated by a Supreme Court whose institutional relationship with the enterprise has never been independently examined; operating within a professional community where the attorneys who would assist the investigation are subject to the same captured regulatory structure; and investigating law firms that are members of the same Tennessee legal community the trustee has practiced within throughout their career. That is not an independent investigation. That is the enterprise investigating itself.**

## D. The Required Qualifications for a Non-Attorney Subject Matter Expert Trustee

Appellant respectfully submits that this Court's remand order should direct the United States Trustee to appoint an individual meeting the following qualifications:

**QUALIFICATION 1 — NOT AN ATTORNEY:** The appointed trustee must not be licensed to practice law in any state. Bar admission in any jurisdiction creates ties to the legal community and regulatory structure that have been compromised in this record. The trustee's qualifications must derive from subject matter expertise, not legal credentials.

**QUALIFICATION 2 — HEALTHCARE ANALYTICS EXPERTISE:** The appointed trustee must hold demonstrable subject matter expertise in healthcare analytics, Medicare payment system administration, or federal CMS program structure — specifically including working knowledge of MIPS (Merit-based Incentive Payment System) and BPCI Advanced (Bundled Payments for Care Improvement Advanced) payment models, performance reporting requirements, and fraud detection methodologies applicable to those programs.

**QUALIFICATION 3 — FEDERAL HEALTHCARE FRAUD INVESTIGATION EXPERIENCE:** The appointed trustee must have prior experience investigating or auditing fraud against federal healthcare programs, including experience with HHS Office of Inspector General investigations, CMS compliance enforcement, False Claims Act investigations, or forensic accounting analysis of federal healthcare billing fraud. Candidates may be drawn from the ranks of former HHS OIG Special Agents, former CMS compliance officers, forensic accountants specializing in healthcare fraud, or healthcare analytics professionals with demonstrated federal program investigation experience.

**QUALIFICATION 4 — NO TENNESSEE INSTITUTIONAL TIES:** The appointed trustee must have no prior affiliation — as an employee, contractor, advisor, or regulated professional — with: the Tennessee Board of Professional Responsibility; the Tennessee Supreme Court; any Tennessee state agency; any law firm documented in this record as a participant in the enterprise (Evans Petree PC, Butler Snow LLP, Apperson Crump PLC, Bass Berry Sims); any healthcare institution documented in this record (Baptist Memorial Health Care Corporation, Methodist Health System, West Clinic, Stern Cardiology); or any entity that has appeared in Case No. 25-11660 or Case No. 3:23-cv-00851.

**QUALIFICATION 5 — APPOINTMENT FROM OUTSIDE THE WESTERN DISTRICT OF TENNESSEE:** Pursuant to 28 U.S.C. Section 1412 and the U.S. Trustee's appointment authority under 28 U.S.C. Section 586, the appointed trustee must reside or maintain an office outside the Western District of Tennessee. Appellant respectfully requests that preference be given to appointment from a district with no institutional connection to any entity documented in this record.

**QUALIFICATION 6 — FBI AND DOJ COORDINATION CAPACITY:** Given that active criminal referrals are pending with the FBI the appointed trustee must be willing and able to coordinate with federal law enforcement regarding the estate's causes of action and to share evidence developed through the bankruptcy investigation with those agencies without the constraints that attorney-client privilege and professional responsibility rules impose on attorney-trustees.

## VIII. THE PATTERN OF RESULTS IN THIS RECORD SPEAKS FOR ITSELF

This Court is entitled to consider the full pattern of results that Appellant's documented claims have produced across every Tennessee forum that has examined them:

**Tennessee Board of Professional Responsibility:** Dismissed Appellant's complaints against the enterprise law firms with a single sentence: 'This case is closed.' Denied appeal without hearing evidence. Every Tennessee attorney is licensed by this agency.

**U.S. Attorney's Office, Middle District of Tennessee (Kara F. Sweet):** Received Appellant's evidence of Medicare fraud and IP theft. Acknowledged receipt. Then shared Appellant's evidence with Bass Berry Sims — counsel for opposing parties — and told Appellant to stop sending documents. Evidence of the conspiracy was transmitted to the enterprise's own lawyers by a federal official.

**U.S. Attorney Kevin Ritz, Western District of Tennessee:** Refused to investigate reported theft and criminal conduct despite formal contact. Subsequently appointed to the United States Court of Appeals for the Sixth Circuit — now positioned to rule on appeals arising from related litigation. Named as defendant in Appellant's Federal Tort Claims Act claim.

**AUSA Lauren Delery and the U.S. Attorney's Office, Western District of Tennessee (Active Sory Prosecution):** Appellant communicated directly with AUSA Lauren Delery regarding the enterprise's connection to the Sory prosecution (Case 2:25-cr-20185-TLP) and

the evidence Appellant submitted to the FBI agent investigating that case. Despite direct communication with federal prosecutors actively prosecuting a named enterprise co-conspirator in this same district, no investigation of the enterprise's Medicare fraud, intellectual property theft, or RICO activity has been initiated by the U.S. Attorney's Office for the Western District of Tennessee. This continues the documented pattern: federal law enforcement in Tennessee receives evidence of enterprise activity and takes no action against the enterprise itself — while a named co-conspirator is simultaneously prosecuted for an unrelated federal offense in the same courthouse.

**U.S. District Court, Middle District of Tennessee (Case No. 3:23-cv-00851):** Dismissed Appellant's civil rights action despite an unrebutted affidavit — a filing that, by legal operation, established every fact within it as admitted. Improperly referred the case to a magistrate without consent in violation of 28 U.S.C. Section 636(c).

**U.S. Bankruptcy Court, Western District of Tennessee (Case No. 25-11660):** Dismissed rather than converted — over the U.S. Trustee's recommendation, without evidentiary hearing, without written findings — leaving a deemed-allowed $900 million claim without administration and a documented RICO enterprise involving Medicare fraud against federal programs without a court-appointed investigator.

Every Tennessee tribunal — state and federal — that has touched this matter has reached the result most protective of the enterprise. This Court's decision on this Show Cause Response will either continue that pattern or break it. Appellant respectfully submits that this Court has the authority, the record, and the legal obligation to break it — and that a non-attorney subject matter expert trustee appointed from outside this district is the mechanism that makes a genuine independent investigation possible for the first time.

## IX. THE UNITED STATES TRUSTEE RECOMMENDED CONVERSION; NO PARTY RECOMMENDED DISMISSAL; THE BANKRUPTCY COURT DISMISSED WITHOUT FINDINGS — THIS IS PLAIN ERROR REQUIRING REVERSAL

The procedural error at the heart of this appeal requires no extended briefing to establish. 11 U.S.C. Section 1112(b)(1) requires that upon a finding of cause the court shall convert or dismiss, whichever is in the best interests of creditors and the estate, with specific written findings. The record shows:

- **The supporting creditor** — Appellant — recommended conversion to Chapter 7.
- **No party** recommended dismissal.
- **The Bankruptcy Court** dismissed without an evidentiary hearing.
- **The Bankruptcy Court** issued no written findings explaining why dismissal — not conversion — served the best interests of creditors and the estate.
- **The practical result** — a trustee investigation recommended by the creditor was foreclosed without explanation.

No brief is needed to establish this. The docket establishes it. The remedy is reversal and remand with conversion instructions and direction to appoint a trustee meeting the qualifications this record demands.

## X. SUMMARY DISPOSITION IS THE APPROPRIATE AND PROPORTIONATE REMEDY — FULL BRIEFING SERVES ONLY TO DELAY A FEDERAL INVESTIGATION

Federal Rule of Bankruptcy Procedure 8019 grants this Court authority to act without awaiting full briefing. Summary disposition is appropriate where: (1) the legal error is apparent from the record; (2) the remedy is legally compelled; and (3) full briefing serves no purpose except delay.

All three conditions are conclusively met. The legal error — dismissal without findings over the U.S. Trustee's conversion recommendation — is apparent from the docket. The remedy — reversal, remand, conversion, and appointment of a qualified trustee — is compelled by 11 U.S.C. Section 1112(b)(1) and the documented record. Full briefing serves one practical purpose: it gives Evans Petree PC additional months to monitor proceedings while the estate's unencumbered assets remain unprotected, the RICO enterprise co-conspirators remain unexamined, the Medicare fraud against federal MIPS and BPCI Advanced programs remains uninvestigated, and a non-attorney subject matter expert who could actually trace the stolen Monorail technology through the federal billing system remains unappointed.

Summary disposition eliminates that delay. It resolves a legal question fully answerable on the existing record. It creates the mechanism — a qualified non-attorney subject matter expert trustee from outside this district — through which the fraud documented in this record finally receives the independent, expert investigation it has never received.

## XI. REQUESTED RELIEF

Appellant respectfully requests that this Court:

1. **PRIMARY RELIEF — SUMMARY DISPOSITION AND REMAND WITH QUALIFIED TRUSTEE APPOINTMENT:** Treat this Response as a Motion for Summary Disposition under FRBP 8019; reverse the Bankruptcy Court's February 17, 2026 dismissal order as plain error under 11 U.S.C. Section 1112(b)(1); remand Case No. 25-11660 with instructions to convert the case to Chapter 7; and direct the United States Trustee to appoint a non-attorney subject matter expert trustee from outside the Western District of Tennessee who: (a) is not licensed to practice law in any state; (b) holds demonstrable expertise in healthcare analytics, MIPS, BPCI Advanced, or federal CMS program fraud investigation; (c) has prior experience investigating fraud against federal healthcare programs as a former HHS OIG agent, CMS compliance officer, forensic accountant specializing in healthcare fraud, or equivalent; (d) has no institutional ties to the Tennessee Board of Professional Responsibility, Tennessee Supreme Court, or any entity documented in this record; and (e) is willing and able to coordinate with the FBI and DOJ regarding the estate's causes of action;

2. **DISCHARGE OF SHOW CAUSE ORDER:** Discharge D.E. 28 upon finding that this Response demonstrates summary disposition relief.

3. **TRANSFER CONSIDERATION:** In the alternative or in addition, consider transfer of Case No. 25-11660 pursuant to 28 U.S.C. Section 1412 in the interest of justice to a district outside Tennessee — including the District of Colorado — where a trustee panel is available that has no institutional connection to the documented enterprise;

4. **RESERVATION OF NOMINATION RIGHT:** Appellant expressly reserves the right, following issuance of any remand order, to submit to the United States Trustee written nominations of specific individuals who meet the qualifications directed by this Court, and to object pursuant to 11 U.S.C. § 324 to any trustee appointment that does not comply with this Court's remand instructions regarding subject matter expertise and institutional independence from the Tennessee Board of Professional Responsibility and any entity documented in this record as a participant in the enterprise; and

5. **SUCH OTHER RELIEF** as this Court deems just and proper.

### DECLARATION UNDER PENALTY OF PERJURY

I, Randel Edward Page, Jr., declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief, and that all factual representations herein are accurate and supported by the docketed record in Case No. 25-11660 and Case No. 1:26-cv-01037, by Appellant's sworn Affidavit filed as ECF No. 62, and by the criminal referrals submitted to the Federal Bureau of Investigation on February 20, 2026.

Respectfully submitted,

**Randel Edward Page, Jr.**
Pro Se Appellant
3504 Milford Cove
Collierville, Tennessee 38017
Telephone: (901) 351-6060
Email: randelpage@gmail.com
Date: April 29, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on April 29, 2026, a true and correct copy of the foregoing Response to Order to Show Cause and Motion for Summary Disposition was served on the following parties via electronic mail:

**C. Jerome Teel, Jr.** (Counsel for Apperson Crump, PLC)
jteel@tennesseefirm.com

**Carrie Ann Rohrscheib**, United States Trustee, Region 8
carrie.a.rohrscheib@usdoj.gov
200 Jefferson Avenue, Suite 400, Memphis, Tennessee 38103-2374

_____
Randel Edward Page, Jr.